IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) EQUAL EMPLOYMENT<br>   OPPORTUNITY<br>   COMMISSION,<br><br>       Plaintiff,<br><br>    v.<br><br>(1) H.C. EMPLOYEES, LLC<br><br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.:<br><br><br>**C O M P L A I N T**<br><br>JURY TRIAL DEMANDED |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 (Title VII), as amended by the Pregnancy Discrimination Act of 1978 , and Title I of the Civil Rights Act of 1991, to correct unlawful sex discrimination in employment and to provide appropriate relief to Izabelle Hacker, who was adversely affected by such practices. As alleged with greater particularity below, Defendant H.C. Employees, LLC, violated Title VII by terminating Hacker's employment because of her pregnancy.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.     Venue is proper in this Court because the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Oklahoma.

## PARTIES

3.     Plaintiff, the Equal Employment Opportunity Commission (Commission), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4.     At all relevant times, Defendant H.C. Employees, LLC (Home Creations), a for-profit domestic limited liability company, has continuously been doing business in the State of Oklahoma and the Cities of Moore and Oklahoma City, and has continuously employed at least 15 employees.

5.     At all relevant times, Home Creations has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

6.     More than thirty days prior to the institution of this lawsuit, Izabelle Hacker timely filed a charge of discrimination, Charge No. 564-2024-01564, with the Commission. The charge alleged violations of Title VII by Home Creations.

7.     The Commission sent Home Creations timely notice of the charge.

8.     On January 23, 2026, the Commission issued to Home Creations a Letter of Determination finding reasonable cause to believe that it violated Title VII.

2

9.      The Commission invited Home Creations to join with it in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

10.     The Commission engaged in communications with Home Creations to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination.

11.     The Commission was unable to secure from Home Creations a conciliation agreement acceptable to the Commission.

12.     On or about April 8, 2026, the Commission issued a Notice of Failure of Conciliation to Home Creations.

13.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

14.     In or around June or July 2023, Izabelle Hacker interviewed for a New Home Sales Consultant position with Home Creations.

15.     During the hiring process and throughout Hacker's employment, Home Creations's Director of Sales and Marketing John Burris and Sales Field Manager Travis Basden repeatedly expressed negative views about pregnant sales consultants and tied pregnancy to attrition and lack of commitment.

16.     At Hacker's final job interview with Burris and Basden, Burris told Hacker "don't drink the water" at Home Creations because women at the company "get pregnant and leave." Basden laughed, and Burris went on to explain that at least three former

female sales consultants became pregnant, worked until giving birth, and then quit for more flexible real-estate work.

17. Burris and Basden also asked Hacker whether she was married or had kids and about her future plans for her career and family. Hacker responded that she was getting married in September 2023 and would require a week off work, and that she did not plan to have children.

18. Home Creations hired Hacker, and she began work as a New Home Sales Consultant on July 13, 2023. She reported to Basden, who reported to Burris.

19. New Home Sales Consultants' job duties included marketing homes in new communities, showing and selling new homes, and hosting open houses at model homes.

20. Home Creations considered the first ninety (90) days of employment an "introductory" period, during which sales consultants would learn about floor plans, optional upgrades, available communities, contracts, and other product information. Home Creations allegedly utilized this period to determine whether a new hire is a "good fit."

21. Burris led weekly informational meetings with all the sales consultants to share sales updates, goals, and other sales-related information.

22. During Hacker's employment, Burris and Basden continued to express negative views about pregnant sales consultants.

23. For example, in or around early August, Hacker attended a real estate broker's event with Basden and other Home Creations sales consultants. At the event,

4

Basden pointed to a female realtor and told the Home Creations consultants that the woman was a former Home Creations consultant who quit after becoming pregnant.

24. In late August or early September, Hacker learned she was unexpectedly pregnant and was hesitant to tell Basden or Burris about her pregnancy because of their previous negative comments about pregnant sales consultants.

25. In early October, Hacker was aware that then end of her 90-day introductory period was approaching, and she asked Basden if there was anything she could do to improve her performance or otherwise progress before the end of the period. Hacker noted that another sales consultant hired around the same time that she was hired had already been tested on product knowledge. Basden assured Hacker that she was "doing well," that her performance was satisfactory, and that he would meet with her soon for her product-knowledge assessment.

26. At the end of the conversation, Hacker told Basden that she was pregnant. Basden congratulated her and the conversation ended.

27. Less than two weeks later, on October 13, 2023, Hacker met with Basden and Burris for what Hacker believed was her first performance review at the end of her introductory period. Instead, Burris told Hacker that she was being terminated.

28. Hacker asked if the decision was because of her performance; Burris told her that the decision was not because of her performance and that her sales were strong, but her product-knowledge was unsatisfactory. Hacker told Burris she had never been tested on product knowledge, and Burris whispered to Basden, "You never tested her?" Basden did not respond.

5

29.     Burris then said that there were "other reasons" for her termination and stated that Hacker had been unable to recall contract language from memory when she was called on during a weekly meeting. Hacker told Burris that she could recite the language and offered to do so, but Burris told her not to recite the contract language and said the reason for her discharge was a "company decision."

30.     Following her termination, Home Creations said it fired Hacker for other reasons, including her sales performance. However, Home Creations retained the other sales consultant hired around the same time as Hacker, who had similar tenure, training, sales performance, and was male and not pregnant.

31.     Home Creations, through Basden and Burris, knew that Hacker was pregnant at the time it made the decision to terminate her.

## STATEMENT OF CLAIM

### Termination Because of Sex (Pregnancy) in Violation of Title VII

32.     Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

33.     On or about October 13, 2023, Home Creations engaged in an unlawful employment practice in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), when it terminated Hacker because of her sex (pregnancy).

34.     The effect of the discriminatory practices complained of herein has been to deprive Hacker of equal employment opportunities and to otherwise adversely affect her status as an employee because of her sex (pregnancy).

35.    As a direct and proximate result of the practices complained of in the foregoing paragraphs, Hacker has suffered actual pecuniary and non-pecuniary damage, including but not limited to lost earnings and benefits, emotional pain, suffering, embarrassment, and inconvenience.

36.    The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Hacker.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Home Creations, its officers, agents, servants, employees, attorneys, assignees, and all persons in active concert or participation with Home Creations, from engaging in any employment practice that discriminates on the basis of sex (pregnancy), including terminating employees on the basis of sex (pregnancy).

B.    Order Home Creations to institute and carry out policies, practices and programs that provide equal employment opportunities for women and pregnant employees, and which eradicate the effects of Home Creations's past and present unlawful employment practices.

C.    Order Home Creations to make whole Izabelle Hacker by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to rightful place reinstatement of Hacker.

D.      Order Home Creations to make whole Izabelle Hacker by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

E.      Order Home Creations to make whole Izabelle Hacker by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain and suffering, humiliation, embarrassment, loss of self-esteem, anxiety, stress, and loss of enjoyment of life, in amounts to be determined at trial.

F.      Order Home Creations to pay Izabelle Hacker punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G.      Grant such further relief as the Court deems necessary and proper in the public interest.

H.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

CATHERINE L. ESCHBACH
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

ANDREA G. BARAN
Regional Attorney

LAUREN W. JOHNSTON, OK Bar #22341
Assistant Regional Attorney

/s/ Patrick J. Holman
PATRICK J. HOLMAN, OK Bar #21216
Senior Trial Attorney
U.S. Equal Employment Opportunity
Commission
Oklahoma City Area Office
215 Dean A. McGee Ave., Ste. 524
Oklahoma City, OK 73102
Holman Phone: (405) 666-0374
Johnston Phone: (405) 666-0379
patrick.holman@eeoc.gov
lauren.johnston@eeoc.gov
andrea.baran@eeoc.gov

**ATTORNEYS FOR PLAINTIFF
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION**

9